**Jeffery Paul PRICKETT, Plaintiff,**

v.

**AMOCO OIL CO., Defendant.**

**No. 2:98–CV–464C.**

United States District Court,
D. Utah,
Central Division.

June 27, 2001.

Jeffery Paul Pricket, Salt Lake City, UT, pro se.

Dennis J. Conroy, Fred R. Silvester, Silvester & Conroy, LC, Salt Lake City, UT, Debra Nahrstadt, Michael Weinbaum, Chicago, IL, for Defendant.

## ORDER

CAMPBELL, District Judge.

Plaintiff Jeffery Paul Prickett has brought this lawsuit against his former employer, Defendant Amoco Oil Company ("Amoco"), alleging that Amoco discriminated against him in violation of the Americans with Disabilities Act ("ADA"). This matter is before the court on Amoco's motion for summary judgment. For the reasons set forth below, the court grants Amoco's motion for summary judgment.

## Background

In August 1982, Plaintiff Jeffery Paul Prickett began work as a Customer Service Representative ("CSR"), performing cashier and attendant duties, at a Rainbo gas station owned by Defendant Amoco Oil Company ("Amoco"), in the Salt Lake City area. During Prickett's employment with Amoco, he injured his back on the job on three different occasions—in 1983, 1987, and 1994. According to Prickett, his back injury causes him moderate pain, prevents him from sitting or standing for more than an hour at a time, and prevents him from lifting more than twenty-five pounds.

At Prickett's request, Amoco provided Prickett with a chair with a supportive back and adjusted his work responsibilities so that he would not have to do any heavy lifting. So that his lack of mobility due to back pain would not limit his work, Prickett requested and received transfers to smaller gas stations, moving from station # 7113 to station # 7110 in 1984 and then to his current station # 7124 (hereinafter "Prickett's station"), a small gas station, later in 1984.

In 1997, Amoco introduced new work processes for its gasoline stations. The new work processes governed how CSRs were to perform their work duties, and the CSRs at Prickett's station were trained on the new work processes. Amoco alleges that Prickett refused to follow the new work processes and that, as a result, the station began receiving poor scores on Amoco's internal audits. (*See* Decl. of Cindy Jensen, attached as Ex. E to Def.'s Mot. for Summ.J.) Prickett, however, alleges that, once he was aware of the need for the new work processes, he performed every one of them except for the one he could not due to his back impairment—taking down a heavy overhead metal rack in order to inventory cigarettes.

On May 7, 1997, Prickett met with Lora Olsen, the Recruiter/Trainer for Amoco

employees in Salt Lake City, to discuss the conflict over the new work processes. Later that day, the manager of the station, Brad Flores, decided to suspend Prickett for perceived insubordination relating to the work processes. Prickett's suspension was with pay, and Prickett later received the pay he would have earned during his suspension period. Prickett was informed of his suspension, and the suspension went into effect, on May 8, 1997. On May 15, 1997, Prickett met with Mr. Flores, Ms. Olsen, and Bill Dublinsky, the area manager for the southern Salt Lake City market. Mr. Dublinsky told Prickett that he had decided to reinstate him, but that Prickett would have to transfer to another station. The station to which Mr. Dublinsky wanted to transfer Prickett was a larger station. Prickett was familiar with the layout and the job responsibilities at this larger station due to a previous training session there, and he was concerned that his back impairment would prevent him from performing the job duties at this larger station. Prickett responded by saying "I can't transfer. I can't work at that bigger store." (Prickett Dep. at 97, attached as Ex. A to Def.'s Mot. for Summ.J.) Mr. Dublinsky reassured Prickett that Amoco would continue to make adjustments to Prickett's job duties in order to accommodate Prickett's physical limitations. Mr. Dublinsky also made clear to Prickett that if Prickett did not accept the reassignment, Mr. Dublinsky would take it as a resignation of Prickett's position at Amoco. Prickett refused to accept the reassignment, and his employment with Amoco was terminated.

## Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Pueblo of Santa Ana v. Kelly,* 104 F.3d 1546, 1552 (10th Cir.1997).

Once the moving party has carried its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)); *see also Gonzales v. Millers Cas. Ins. Co.,* 923 F.2d 1417, 1419 (10th Cir.1991). The non-moving party must set forth specific facts showing a genuine issue for trial; mere allegations and references to the pleadings will not suffice. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## Discussion

### I. Disability Discrimination

 To establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that: "(1) [he] is a disabled person as defined by the ADA; (2)[he] is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) the employer discriminated against [him] because of [his] disability." *Doyal v. Oklahoma Heart, Inc.,* 213 F.3d

492, 495 (10th Cir.2000). The plaintiff bears the burden of either demonstrating or raising a genuine issue of material fact on each of these three issues. *See id.*

### A. Is Prickett considered "disabled" under the ADA?

Under the ADA, a disability is defined as

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Amoco contends that Prickett's back impairment is not a disability as defined by the ADA.

#### 1. Substantially limits a major life activity

 When considering whether a plaintiff's impairment substantially limits a major life activity, a court proceeds in three steps. First, "the court must determine whether the plaintiff has an impairment.... Second, the court must identify the life activity upon which the plaintiff relies and determine whether it constitutes a major life activity under the ADA.... Third, the court asks whether the impairment substantially limited the major life activity ." *See Doyal,* 213 F.3d at 495, *citing Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). It is undisputed that Prickett's back problem represents an "impairment" under the first prong of this test. (*See* Def.'s Mem. in Supp. of Mot. for Summ.J. at 20.) As to the second prong, Prickett has indicated that the major life activities affected by his impairment are (1) lifting, (2) extended sitting or standing, and (3) sleeping. (*See* Prickett Dep. at 98–102, attached as Ex. A to Def.'s Mot. for Summ.

J.)[1] Each of these three categories are recognized as "major life activities" by the Tenth Circuit Court of Appeals. *See Selenke v. Medical Imaging of Colo.*, 248 F.3d 1249, 1257–58 (10th Cir.2001) (recognizing "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, sleeping, sitting, standing, lifting, reaching, and working" as major life activities); *Doyal*, 213 F.3d at 495–96 (same).

The third prong requires a court to determine whether Prickett is "substantially limited" in any of the identified major life activities.

> In order for an impairment to be substantially limiting, the individual must be (1) Unable to perform a major life activity that the average person in the general population can perform; or (2) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

*Doyal*, 213 F.3d at 496, *citing* 29 C.F.R. § 1630.2(j)(1). Since Prickett does not contend that he is completely unable to perform the identified major life activities, the question then becomes whether he is significantly restricted as compared with the average person. In making this determination, consideration should be given to (1) "[t]he nature and severity of the impairment"; (2) "[t]he duration or expected duration of the impairment"; and (3) "[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."

*Doyal*, 213 F.3d at 496, *citing* 29 C.F.R. § 1630.2(j)(2).

### a. Lifting restriction

Prickett testified at his deposition that he is unable to lift more than twenty-five pounds as a result of his back impairment, but that, as long as he abides by this lifting restriction, his back impairment does not prevent him from performing other work duties. (*See* Prickett Dep. at 100–01, attached as Ex. A to Def.'s Mot. for Summ.J.)

In lifting restriction cases, the Tenth Circuit has required that a plaintiff, in addition to demonstrating his own limitations, must provide "comparative evidence as to the general population's lifting capabilities." *See Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1241 (10th Cir. 2001). In *Lusk*, the plaintiff had a forty-pound lifting restriction due to a heart condition. The plaintiff failed to demonstrate whether this was more severe than the restrictions on an ordinary person, and the court refused to infer that such a limitation was more than that faced by an ordinary person. *See id.* at 1240–41. Similarly, in *Gibbs v. St. Anthony Hosp.*, No. 96–6063, 1997 WL 57156 (10th Cir. Feb.12, 1997), the court held that evidence of a twenty-five pound repetitive lifting restriction and a thirty-five pound occasional lifting restriction, without more, was insufficient to establish that plaintiff was substantially limited in the major life activity of lifting, and it refused to draw the inference that this restriction was more severe than that faced by the average person. *See id.* at *2. Although Prickett's lifting restriction in this case—a twenty-five pound lifting restriction—is slightly more

---

1. In his pleadings, Prickett suggests that the affected major life activities are "walking, running, standing, sitting, sleeping, lifting, moving, and procreation." (Pl.'s Mem. in Opp. to Mot. for Summ.J. at 12). This does not comport, however, with his deposition testimony, and Prickett has not provided any evidence that he is substantially limited in these additional categories.

restrictive, the *Lusk* court cited favorably to two cases in which other circuits have held that a twenty-five pound lifting restriction, without more, was insufficient to establish a substantial limitation on a major life activity. *See Lusk*, 238 F.3d at 1241, *citing Thompson v. Holy Family Hosp.*, 121 F.3d 537, 540 (9th Cir.1997) (finding twenty-five-pound lifting restriction not substantially limiting on its face) and *Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 349 (4th Cir.1996) (holding, as a matter of law, that a twenty-five pound lifting limitation does not substantially limit the performance of any major life activity), *cert. denied*, 520 U.S. 1240, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997); *accord Aucutt v. Six Flags Over Mid–America, Inc.*, 85 F.3d 1311, 1319 (8th Cir.1996) (same); *Hacker v. City of Orem*, No. 96–1033, slip op. at 6 (D.Utah May 25, 1999) (holding that twenty to twenty-five pound repetitive lifting restriction and forty to fifty pound occasional lifting restriction could not constitute a disability because of plaintiff's failure to present comparative evidence). Because he has not demonstrated that he is significantly restricted in his ability to lift as compared to the average person in the general population, Prickett has failed to meet his prima facie burden that his lifting restriction represents a "disability" protected under the ADA.

### b. Extended standing or sitting

■ Prickett's back injury prevents him from engaging in uninterrupted standing or sitting for more than about an hour: if Prickett has been standing for about an hour he needs to sit down to take a rest for a few minutes, or if he has been sitting for about an hour he needs to get up to walk around for a few minutes. (*See* Prickett Dep. at 71–72, attached as Ex. A to Def.'s Mot. for Summ.J.) Courts have held, however, that even more restrictive standing/sitting limitations do not constitute a disability protected by the ADA.

> Because [the plaintiff] can stand and walk for fifty minutes at a time, and can continue for longer periods if he takes a break every hour, he can carry out most regular activities that require standing and walking, even though he may not be able to perform [the employer's] jobs without accommodation. We conclude that his ability to walk and stand is not significantly less than that of an average person.

*Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 186–87 (3d Cir.1999); *accord Miller v. Airborne Express*, No. 3:98–CV–0217–R, 1999 WL 47242, at *5 (N.D.Tex. Jan.22, 1999) (granting summary judgment against plaintiff who, following surgery, could only stand for thirty minutes without resting). These decisions have been cited favorably by district courts in this circuit. *See McCleary v. National Cold Storage, Inc.*, 67 F.Supp.2d 1288, 1300–01 (D.Kan. 1999) (finding plaintiff not significantly restricted in his ability to stand or walk despite his permanent foot injury) (collecting cases). Moreover, Prickett has not introduced evidence demonstrating that he is significantly more restricted in his ability to stand/sit than the average person in the general population. *See id.* at 1301.

Accordingly, Prickett has failed to meet his prima facie burden that his standing/sitting limitations constitutes a disability protected under the ADA.

### c. Sleep disruption

■ Prickett testified at his deposition that he occasionally has difficulty sleeping due to back pain. (*See* Prickett Dep. at 104–05.) When Prickett's back "goes out" he is often unable to sleep at night, but this is a relatively rare occurrence. (*See id.* at 101, 105.) Prickett is usually able to control his pain to some degree by taking

sleeping medications or over-the-counter pain medications. (*See id.* at 105.)

"Sleeping difficulties are extremely widespread among the nation's adult population; generalized complaints about a 'a tough night's sleep' have therefore been found insufficient to establish a substantial limitation." *Smoke v. Wal–Mart Stores, Inc.,* No. 98–1370, 2000 WL 192806, at *6 (10th Cir. Feb.17, 2000). *Pack v. Kmart Corp.,* 166 F.3d 1300 (10th Cir.1999), involved a woman whose anxiety disorder caused her to toss and turn throughout the night. As a result, the plaintiff would frequently get no more than two or three hours of sleep a night. Noting that "there is no indication that her sleep problems were severe, long term, or had a permanent impact" and that the plaintiff's sleep could be controlled with medication, however, the Tenth Circuit Court of Appeals held that the plaintiff's sleeping problems could not be considered a substantial limitation on the major life activity of sleeping. *Id.* at 1306. Prickett can control his nighttime pain with medication and can often get a good night's sleep. (*See* Prickett Dep. at 101, 104–05.) Overall, his sleeping difficulties appear far less severe than those of the plaintiff in *Pack.* Prickett's sleeping difficulties are not significantly restricting as compared to the average person in the general population. In sum, Prickett's back impairment does not substantially limit any of his major life activities.

### 2. Record of such an impairment

■ Even if an individual does not have an actual impairment, he can demonstrate a disability if he has a "record of such an impairment." 42 U.S.C. § 12102(2)(B). Prickett contends that he has a record of impairment because records of his back injury are on file with Amoco and with various government agencies. The Tenth Circuit has held, however, that "the impairment indicated in the record must be one that substantially limits a major life activity." *Lusk,* 238 F.3d at 1241. As discussed above, Prickett's back injury is not one that substantially limits a major life activity. Prickett has raised no evidence which would suggest that the record of his impairment demonstrates an impairment more severe than the one he currently claims. Accordingly, the record of Prickett's impairment does not establish a disability.

### 3. Being regarded as having such an impairment

Finally, an individual can establish a disability if he or she "is regarded as having such an impairment." 42 U.S.C. § 12102(2)(C). Prickett contends that Amoco and various government agencies regard him as having a back injury, as demonstrated by Amoco's willingness to accommodate his limitations at work.

■ A person is "regarded as" disabled under the ADA if

(1) a covered [employer] mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered [employer] mistakenly believes that the person's actual, non-limiting impairment substantially limits one or more major life activities.

*Lusk,* 238 F.3d at 1241, *quoting Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *accord* 29 C.F.R. § 1630.2(1). The mere fact that Amoco recognized Prickett's limitations does not mean that it regarded Prickett has having such an impairment under the ADA's meaning. In order for an employer to have discriminated by illegally regarding an individual as disabled, "it is necessary that a covered [employer] entertain misperceptions about the individual." *Sutton,* 527 U.S. at 489, 119 S.Ct. 2139. These misperceptions often arise

out of stereotypes, myths, or fears of disabled persons. *See id.* at 489–90, 119 S.Ct. 2139. "Where the recognition of Plaintiff's limitations is not an erroneous perception, but is instead a recognition of fact, a finding that Plaintiff was regarded as disabled is inappropriate." *Lusk,* 238 F.3d at 1241 (finding that defendant's recognition of plaintiff's lifting restriction did not constitute regarding the plaintiff as disabled).

### B. *Employer discrimination because of disability*

██ Under the facts of this case, moreover, the court concludes that Prickett would be unable to make out a prima facie case of disability discrimination even were he able to demonstrate that his back impairment represents a "disability" protected under the ADA. In order to make out a prima facie case of disability discrimination, a plaintiff must not only demonstrate that he is a disabled person as defined by the ADA, but also that he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired, and that the employer discriminated against him because of his disability. *See Doyal,* 213 F.3d at 495. Even assuming that Prickett is qualified to perform the essential functions of his job as a CSR at Amoco's Rainbo stations, Prickett has not demonstrated that Amoco discriminated against him because of his alleged disability. The facts of this case suggest just the opposite, that Amoco accommodated the job limitations resulting from Prickett's back impairment. During the time Prickett worked for Amoco, Amoco (1) provided him with a chair with a supportive back to minimize Prickett's pain while sitting, (2) adjusted his work responsibilities so that Prickett would not have to perform any heavy lifting on the job, (3) moved Prickett to a smaller station at his request, and (4) again moved Prickett to a still smaller station later that same year.

While Prickett concedes that Amoco generally provided accommodation for his back impairment he alleges that the circumstances of his termination constitute discrimination because of disability. According to Prickett, Amoco forced him into a Catch–22 situation: either accept a transfer to a much larger station where Prickett might have significant difficulties performing the job requirements of a CSR, or be fired for refusing to accept such a transfer. Mr. Dublinsky has testified, however, that "Amoco has always met Mr. Prickett's restrictions and I told him [during the May 15, 1997, meeting], in no uncertain terms, that Amoco would continue to do whatever it needed to do at the new location to meet his restrictions. Unexplainably Mr. Prickett still refused the transfer." (Dublinsky Aff. ¶ 22, attached as Ex. B to Def.'s Mot. for Summ. J.). Prickett acknowledges that Dublinsky did tell him that Amoco would accommodate his physical limitations at the new station. (*See* Prickett Aff. at 169, attached as Ex. A to Def.'s Mot. for Summ.J.) Given the fact that Amoco had generally provided accommodation for his back impairment in the past, Prickett had little reason to believe that Amoco would fail to do so at that time. Prickett has not introduced any evidence that Amoco would have failed to accommodate his back impairment following his move to the larger store. Accordingly, Prickett has not demonstrated that Amoco discriminated against him because of his alleged disability and cannot make out a prima facie case of disability discrimination under the ADA.

### II. *Retaliation*

Prickett also alleges that he was retaliated against after engaging in activity protected by the ADA. Specifically, Prickett alleges that Amoco retaliated against him for (1) expressing concern to Ms. Olsen that Mr. Flores was not accommodating

his back impairment, and (2) refusing a transfer to a larger store, where he felt he would be unable to complete job tasks due to his back impairment.

■ The ADA provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of ... any right granted or protected by this chapter." 42 U.S.C. § 12203(b). Retaliation claims, like other ADA claims on summary judgment, are subject to the burden shifting approach introduced by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Selenke*, 248 F.3d 1249, 1264. Under this approach, a plaintiff must first make out a prima facie case of discrimination. The burden then shifts to the employer to present a non-discriminatory explanation for the action. Finally, the plaintiff must raise questions of fact that the employer's explanation is merely pretext for disability discrimination. *See id.; Morgan v. Hilti*, 108 F.3d 1319, 1323 (10th Cir.1997), *citing McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. 1817.

■ In order to make out a prima facie case of retaliation under the ADA, the plaintiff must show: "(1) [he] engaged in protected action [i.e., opposition to disability discrimination], (2) defendant either after or contemporaneous with that action took adverse action against [him] and (3) a causal connection between [his] action and defendant's adverse action." *See Selenke*, 248 F.3d 1249, 1264; *Martinez v. Pacificorp*, No. 99–4138, 2000 WL 504857, at *2 (10th Cir. Apr.28, 2000); *accord Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 533 (10th Cir.1998) (Title VII and ADEA). A meritorious retaliation claim will stand even if the underlying discrimination claim fails. *See id.*

## A. *Prima facie case*

### 1. *Protected action*

■ On May 7, 1997, Prickett, concerned about how Amoco's newly introduced work processes were affecting his job performance, went to speak with Ms. Olsen, the Recruiter/Trainer for Amoco employees in Salt Lake City. Prickett alleges that, in his conversation with Ms. Olsen, he specifically mentioned that he felt he could not perform some of the new work processes because of his back impairment and that these limitations were not being respected by his supervisor, Mr. Flores. Were this true, Prickett's conduct—speaking with a personnel manager regarding concerns that a supervisor was failing to accommodate an alleged disability—would clearly constitute "protected action." Amoco contends that Ms. Olsen discussed the new job processes with Prickett, but that Prickett never complained of disability discrimination during that meeting. In the context of a motion for summary judgment, however, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348; *Pueblo of Santa Ana*, 104 F.3d at 1552.

At the May 15, 1997, meeting, Prickett complained to Mr. Dublinsky about Mr. Dublinsky's stated intention to transfer Prickett to a larger store, telling Mr. Dublinsky that he could not work at a larger store because of his back impairment. According to Prickett, Mr. Dublinsky then responded by firing him. Prickett's complaints about a transfer that Prickett believed would affect his alleged disability also represents protected action. Based on the above, Prickett has satisfied the first prong of a prima facie case of retaliation by producing evidence that his activities were protected under the ADA.

### 2. Adverse action

■ The second prong of the retaliation test requires Prickett to demonstrate that Amoco, either after or contemporaneous with Prickett's protected conduct, took adverse action against him. *See Selenke,* 248 F.3d 1249, 1264. Amoco contends that Prickett has not satisfied this prong of the test because (1) its suspension and subsequent termination of Prickett did not occur after or contemporaneous with Prickett's protected conduct, and (2) Amoco's treatment of Prickett cannot be considered "adverse action."

Considering Amoco's first contention, Amoco notes that, although Prickett's suspension went into effect on May 8, 1997, it was actually decided by Mr. Flores on or before May 7, 1997, the same day that Prickett spoke with Ms. Olsen. (*See* Flores Aff. ¶¶ 9–11, attached as Ex. C to Def.'s Mot. for Summ.J.) According to Amoco, therefore, Mr. Flores's decision to suspend Prickett could not have been in response to Prickett's protect conduct, because Mr. Flores did not know that Prickett had met with Ms. Olsen to allegedly discuss his back impairment at the time the suspension decision was made. Amoco has failed to introduce evidence, however, about what time of day on May 7 those two event occurred: with further facts introduced at trial, for example, a jury could find that Prickett met with Ms. Olsen in the morning and that Mr. Flores made his decision to suspend Prickett only later in the day after learning about that meeting. Furthermore, while there may be a question regarding the timing of Prickett's meeting with Ms. Olsen, there is no question that Prickett was terminated after he met with Ms. Olsen and after he complained to Mr. Dublinsky about the intended transfer.

Amoco also contends that its treatment of Prickett does not constitute "adverse employment action." The Tenth Circuit Court of Appeals liberally defines the phrase "adverse employment action." *See Sanchez,* 164 F.3d at 532. The Tenth Circuit takes a "case-by-case approach, examining the unique factors relevant to the situation at hand.... Nevertheless, [it] will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action." *Id.* (finding that reassignment which significantly increased commuting time was not adverse employment action) (internal quotations omitted). The Supreme Court has stated that conduct is an adverse employment action if it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Here, Prickett suggests that three of Amoco's actions constitute "adverse employment action": (1) Mr. Flores's decision to suspend Prickett; (2) Mr. Dublinsky's intention to transfer Prickett to a larger store; and (3) Amoco's termination of Prickett after Prickett refused the transfer.

■ Prickett's suspension cannot constitute an adverse employment action: Prickett was suspended with pay, and the suspension was lifted by Mr. Dublinsky only a week later. Prickett's pay, benefits, job responsibilities, and job status appear to have been unaffected by this temporary suspension with pay. And Mr. Dublinsky's intended transfer of Prickett cannot constitute an adverse employment action because the transfer never occurred: Prickett never actually worked at the new Rainbo station, and an employer's unexecuted intentions cannot be considered an "employment action" at all, much less an adverse one. The evidence also suggests that, had the transfer occurred, Prickett

would have had the same pay, benefits, title, and substantially the same job responsibilities at the new station.

It is clear, however, that Amoco's termination of Prickett does represent an adverse employment action. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (terminating employee considered an adverse employment action).

### 3. Causal connection

■ Prickett has raised questions of material fact concerning whether his termination was causally connected to his protected activity. Prickett was terminated only eight days after he spoke with Ms. Olsen, allegedly to complain about Mr. Flores's failure to accommodate his back impairment. Moreover, Prickett was fired by Mr. Dublinsky immediately after Prickett refused a transfer to a larger store, a transfer which Prickett told Dublinsky he could not accept because of his back impairment.

Prickett has made out a prima facie case of disability discrimination with regard to the adverse employment action of termination.

### B. Explanation and pretext

■ Once an employee has satisfied his prima facie burden, the burden then shifts to the employer to present a non-discriminatory explanation for the action. *See Selenke*, 248 F.3d 1249, 1264. Amoco contends that its decision to terminate Prickett is easily explainable: Prickett outright refused his supervisor's decision to move him to a different station. According to Amoco, Mr. Dublinsky made it clear to Prickett that Prickett's refusal to transfer would mean that he was no longer employed by Amoco, yet Prickett did not accept the intended transfer.

Because Amoco has offered a non-discriminatory explanation for its actions, the burden shifts to Prickett to demonstrate that the explanation is merely pretextual. *See id.* Prickett has failed to meet this burden. Prickett has not pointed to any evidence which would suggest that his termination was retaliation for his May 7 meeting with Ms. Olsen. To the contrary, Amoco removed Prickett from suspension and offered to reinstate him to the same job and same benefits following this meeting. Prickett also has not produced evidence that would suggest that his termination was retaliation for his expressing legitimate concerns about the intended transfer. As discussed above, the record reflects that Amoco had provided accommodation for Prickett's back impairment in the past and that Mr. Dublinsky told Prickett that Amoco would continue to accommodate Prickett, either by adjusting his job responsibilities or by having other CSRs at the new station assist him, after his transfer to the new station. Despite this, Prickett refused to consider the transfer without ever giving Amoco an opportunity to accommodate him at the new station. Prickett's speculation—that Amoco's accommodation would not have been effective at a larger station, or that Prickett's new co-workers would have resented him because they would have had to cover for him on several job duties—is conclusory, without support, and is not evidence of pretext for disability discrimination. Prickett has not raised a question of material fact that Amoco's adverse action was merely a pretext for retaliation.

For the above reasons, Amoco's motion for summary judgment is GRANTED.